# EXHIBIT A

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

2025 JUL 15 P 1:48

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COUNTY OF LOS ANGELES, a municipal entity; and DOES 1-10, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

TIMOTHY GARDNER

<table>
<tr><td><em>FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)</em></td></tr>
<tr><td>12t<br><br><strong>Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>3/11/2025 11:42 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By C. Cervantes, Deputy Clerk</strong></td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse

111 N. Hill Street
Los Angeles, CA 90012

| CASE NUMBER:<br>*(Número del Caso):* |
|---|
| 25STCV06878 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Vincent Miller, Law Offices, 16255 Ventura Boulevard, Suite 625, CA 91436 213-948-5702

David W. Slayton, Executive Officer/Clerk of Court

DATE: 03/11/2025
*(Fecha)*

Clerk, by _____ C. Cervantes , Deputy
*(Secretario)* *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).*)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [✗] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [✗] on behalf of *(specify):* Los Angeles County a municipal entity

   under: [ ] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [✗] by personal delivery on *(date):* 7/15/25

Page 1 of 1

**SUMMONS**

VINCENT MILLER (SBN  291973)
NICK SAGE (SBN 298972)
JAMES JIRN (SBN 241189)
THE LAW OFFICES OF VINCENT MILLER
16255 Ventura Boulevard, Suite 625
Encino, CA 91436
Tel.: (213) 948-5702 | Fax: (818) 450-0698
Attorneys for Plaintiff Timothy Gardner

**FILED**
Superior Court of California
County of Los Angeles

**07/14/2025**

David W. Slayba, Executive Officer / Clerk of Court

By: _____ N. Osollo _____ Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

| | |
|---|---|
| TIMOTHY GARDNER,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a municipal entity; and DOES 1-10, inclusive.<br><br>Defendants. | Case No.: 25STCV06878<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1)  DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983;**<br>**2)  RACIAL  DISCRIMINATION  IN VIOLATION OF FEHA (CAL. GOV. CODE SECTION 12940 et. seq,);**<br>**3)  FAILURE  TO  TAKE  ALL REASONABLE  STEPS  TO  PREVENT DISCRIMINATION  IN  VIOLATION  OF FEHA (CAL. GOV. CODE SECTION 12940 et. seq.)** |

**SUMMARY OF ALLEGATIONS**

1.      Plaintiff Deputy Timothy Gardner ("Plaintiff" or "Deputy Gardner") was by all objective accounts an excellent young cop with integrity.

2.      The Defendant County of Los Angeles ("Defendant" or the "County") is notorious for its sheriff's department ("LASD") long being plagued by the practice and custom of unconstitutional policing practices, a lack of transparency, and a lack of accountability for

PLAINTIFF TIMOTHY GARDNER FIRST AMENDED COMPLAINT                                    1

Electronically Received 07/14/2025 09:18 AM

executives engaging in wrongful and illegal conduct, investigating and disciplining deputies on fabricated charges, which has been ongoing for decades and continues today.

3.      Numerous peace officers working for LASD have been railroaded by corrupt executives who face no accountability for their wrongful conduct. No executives are ever disciplined for framing and setting up other employees. The County provides no oversight of the wrongful actions by LASD against its own employees. The County never intervenes on behalf of its employees to remedy mistreatment by LASD. To the contrary, the County supports LASD actions to "muddy" up the falsely accused and disciplined employee, with more false allegations against the employee. When the County knows the employee has been railroaded, the County does nothing to intervene and reverse the injustice. Instead, the County adopts the attitude of "let the employee sue us or appeal to civil service."

4.      LASD maintains a culture of toxic leadership with a lack of support for deputies and sergeants. Consequently, the morale of LASD deputies, who put their lives on the line daily to protect County residents, has been severely damaged and is currently at an all-time low.

5.      The morale among deputies suffered another severe blow when LASD executives subjected Deputy Gardner to its unconstitutional policing practices. Due to the egregious mistreatment of Deputy Gardner, there is now deep distrust between the rank and file and the top brass at LASD.

6.      Plaintiff was framed by LASD and terminated without due process in July 2023, fired not for reasons of merit but because he happened to be Caucasian and a resident happened to be African American.

7.      Deputy Gardner's co-workers, fellow deputies, are angered by the County's ruthless scapegoating and framing of Deputy Gardner to make good media for the department leadership. It is not a secret that Deputy Gardner is a good cop who got railroaded by the department. Deputy Gardner calls on the County to reverse his termination, restore his employment, and issue an apology for its nightmarish, wrongful treatment.

8.   On July 13, 2022, Deputy Gardner rescued the baby from a suspect who was belligerently and defiantly holding the baby precariously and threatening to break the baby's legs. What preceded the suspect's threat was this suspect, along with two other suspects, were riding in car, while holding their babies in their laps, without seat belts or child safety seats, while the driver was recklessly driving without headlights and while intoxicated, with the suspect recklessly putting her baby's life in danger.

9.   Deputy Gardner came to the call to assist the handling deputies. The handling deputies pulled the car over and did everything they could following policies and protocol to deescalate the situation, as they moved to detain the suspects for child endangerment and to protect the baby from further risk to his/her safety. The efforts to de-escalate did not work and Deputy Gardner proceeded to assist, as the suspect tightened her frightening grip on the baby.

10.   The handling deputies did nothing wrong in how they handled the call. In addition, given that he was not handler of this call, Deputy Gardner could not be accused of causing an escalation of tension between the suspect and deputies up this point. Deputy Gardner was there to assist, and with his assistance, he did his job the way deputies are trained to do, the right way, in the best manner he could think of to minimize risk to health and safety of the baby.

11.   The baby's health and safety were at risk. Deputy Gardner, for good reason, believed the baby's health and life were at risk, as the suspect continued to tighten her grip, and talked of the baby's legs breaking. Deputy Gardner, following policy at all times, acted quickly to get the baby to safety. Deputy Gardner did not use his gun or taser, but instead simply used his hands to save the baby. Deputy Gardner's methods worked perfectly, with him quickly and safely getting the baby out of the suspect's frightening grip.

12.   Deputy Gardner should have been commended for his actions. He followed policy at all times and saved a baby.

13.   Deputy Gardner's innocence is not disputable. After wrongfully terminating Deputy Gardner, LASD and the County made admissions that Gardner did no wrong whatsoever.

Even the Chief, Dennis Kneer, who engineered the framing of Deputy Gardner made admissions that prove Deputy Gardner was innocent and did not violate any policies, or engage in an illegal excessive use of force. Yet, the County has shamefully not reversed its unconstitutional termination of Deputy Gardner.

14.     On multiple occasions, the County made the admission that Gardner committed no wrong at all in handling the incident in question. The County admitted that Gardner used reasonable force and violated no policies. See the attached Exhibits 1 (Paragraph 12, and 2 (Statement of the Case): the County filed court papers in which they acknowledge Gardner's innocence. The County stated truthfully, "the conduct of the involved deputies was objectively reasonable." The County also stated truthfully, "the deputies' conduct was reasonable, and thus, did not amount to excessive force."

15.     Despite the County admitting soon after it terminated him that Deputy Gardner did nothing wrong in the process of rescuing the endangered baby, the County nonetheless maliciously sought to further harm Deputy Gardner with a meritless criminal investigation—one that was quickly rejected by the US Attorney's office. LASD then tried to get its Internal Criminal Investigation Bureau ("ICIB") to railroad Deputy Gardner with a meritless internal criminal investigation. However, the day the ICIB investigators received the referral, supervisors and investigators knew that there was no merit to the charge that Deputy Gardner had violated any policy, let alone committed a crime. In fact, right after the incident occurred the year before, LASD consulted ICIB, who rejected the case because no crime had been committed. Accordingly, LASD's decision to refer the matter to ICIB a second time is one of many actions that show an improper motive by LASD leadership.

16.     ICIB recently concluded its investigation into Deputy Gardner. The case was sent to the District Attorney, even though LASD and the County know there is no evidence of a crime.

17.     The County cannot get around the fact that it unjustly (and unlawfully) fired Plaintiff, falsely claiming that he used excessive force on the suspect and then filed official court documents containing the truth—that Plaintiff did no wrong.

18.     The truth is that during and after the incident, LASD supervisors and executives knew that Deputy Gardner not only had done no wrong, but in fact had saved a baby from being severely harmed, possibly killed.

19.     However, Chief Dennis Kneer tarnished his otherwise long, solid career at LASD by framing Deputy Gardner for purely for racial and public relations purposes. Kneer reasoned that because Gardner was white and the suspect threatening to break the baby's legs or worse was black, it would be bad optics for members of the public to see video of the incident. Kneer was well aware that hundreds of times Caucasian deputies used the same methods as Gardner's tactics on Caucasian suspects, hundreds of times Hispanic/Latino deputies used the same methods as Gardner's on Latino suspects, and hundreds of time African American deputies used the same methods as Gardner on African American suspects, and in those instances the deputies were not punished, as they should not have been. So, the only issue here for Gardner was that Plaintiff was white and the suspect black.

20.     Adding to LASD executives' concerns about the optics of a white cop using his hands on a black suspect, Kneer and LASD sought to appease activist groups. In the process, Kneer engaged in wrongdoing and racism, railroading an excellent cop. Kneer was well aware of high-profile, controversial cases involving deputies accused of using excessive force, especially against African American residents and suspects. Kneer reasoned that while what the Plaintiff did was correct, the "optics" on the body camera footage did not look good on the surface for the Department.

21.     At the time of the incident, Alex Villanueva was the sheriff. Sheriff Villanueva and other executives reviewed the incident and properly concluded that Deputy Gardner had done nothing wrong. Sheriff Villanueva has since reiterated that truth is that the Plaintiff did no wrong

whatsoever. Gardner simply engaged in good policing. However, other executives and supervisors at LASD discussed that the incident looked bad because Gardner happened to be white, and the one hurting and threatening to break the legs of the baby was black. After Villanueva left office, Kneer pushed the IAB case against Gardner along and got him terminated..

22.    Kneer and other top level executives at LASD openly discussed the "bad optics" of the incident. By bad optics they meant the use of force by a white cop on an African American resident. Instead of using more lethal force, his gun or taser, as he was trained to do by LASD, Deputy Gardner used less lethal means, his fist, punching the suspect to get her to release the baby. The maneuver worked perfectly. But Kneer considered the potential media headlines and figured it would be a good idea to destroy a good cop's career. Kneer, cynically seizing the opportunity created by the incident, figuratively threw the good deputy, Gardner, under the bus for his own professional gain.

23.    While everyone in LASD knew that Gardner did the right thing and saved a baby, Kneer directed an acting captain who was unfamiliar with the case to suspend Deputy Gardner for 15 days, with no explanation of what alternative actions Plaintiff could have taken to save the baby.

24.    The illegitimacy of Kneer's conduct and frame up of Deputy Gardner was made even more clear when Kneer escalated the 15-day suspension into a termination of Gardner after Kneer saw media coverage of another incident that had nothing to do with Plaintiff. The media covered the story of another white/Caucasian LASD deputy in the Antelope Valley accused of using excessive force against an African American/black resident. Kneer decided that he and LASD needed to frame Deputy Gardner more aggressively because of the potential fallout from the other unrelated incident. On July 20, 2023, Kneer gave notice to Plaintiff that he would be terminated from his job and career at LASD.

25.    Chief Kneer presented the video of the incident involving Deputy Gardner to Sheriff Robert Luna. Kneer convinced Luna that the video looked bad, and that it would cause bad

publicity for LASD if the video were released to the media. On the surface, a white cop hitting a black woman to take her baby could look "bad" if not presented in context. The context was that the suspect endangered the baby by holding the baby in a moving vehicle in her lap and without a seatbelt, as the intoxicated driver drove with no headlights. After being pulled over by deputies, the suspect squeezed and held the baby and threatened to break the baby's legs. Deputy Gardner chose the safest option: hit the suspect. The baby was safely rescued without serious harm to the suspect. However, LASD executives were only concerned about "optics" of Deputy Gardner bring white.

26.    In making their decision to terminate Plaintiff, LASD executives emphasized that it looked bad that Deputy Gardner was a white cop and suspect was black. There is no question that Deputy Gardner's race was the reason why LASD terminated him. In fact, Deputy Gardner's race and the coincidence that the suspect was African American was the only reason Gardner was disciplined and terminated. The County and its officials provided no scrutiny, no oversight of the matter, and allowed Gardner to be framed and unjustly terminated.

27.    Luna and LASD also apparently figured it would be a good strategy to go public with the video, to accuse Deputy Gardner of horrible conduct and announce that LASD was terminating him.

28.    The public announcement by LASD destroyed Deputy Gardner's reputation, falsely portrayed by LASD as a racist white cop who used unreasonable force on an innocent black resident. By scapegoating Deputy Gardner, LASD executives sought to present the image of LASD as refusing to cover up excessive force and cracking down on unconstitutional policing. But the Plaintiff was not the one engaging in racism here.

29.    There was and is zero evidence that Deputy Gardner is racist. The Plaintiff is not racist. He was fired because of the racism of others. The Plaintiff is passionate about protecting all members of the community. Any allegation that Deputy Gardner's effort to save the African American baby was a racist act is without foundation. Gardner was not the handling deputy on the

call and was not involved in pulling over the suspects. Gardner is not the one who made the decision to arrest the suspects. Gardner was assisting the handling deputies (who also did no wrong), yet, LASD also suggested that Plaintiff did not "de-escalate" the situation, in addition to claiming that the force he used was excessive.

30.     This wrongful termination and public and televised denunciation of Deputy Gardner, depicting him as a racist white cop who used unreasonable force against a black woman, caused Gardner to become the target of racism by members of the community. Deputy Gardner received death threats and had to hide with his family away from their residence.

31.     If not for Deputy Gardner being white/Caucasian, he would not have been disciplined for saving a baby. Not only were Deputy Gardner's constitutional rights violated, but he is also a victim of racism and racial discrimination.

32.     There has been a long and shameful history of racism in the United States against African Americans. There have been shameful incidents throughout American history of black citizens being subjected to violence due to their race, among the most recent involving white officer Derek Chauvin using excessive force against George Floyd and costing the latter his life. But these facts do not justify LASD's racism treatment and scapegoating of Deputy Gardner.

33.     After Sheriff Luna publicly condemned Deputy Gardner, the so-called victim, who repugnantly threatened to break her own baby's legs, filed her own lawsuit against the County. In response to that lawsuit, the Defendant County admitted that Deputy Gardner violated no policies and used reasonable force in the incident. But the County still did not reverse its shocking and wrongful termination of the Plaintiff and give him his job back.

34.     Sheriff Luna explained his actions against Gardner by stating that Deputy Gardner violated policy when he hit the resident to save the baby, when the alternative would have been shooting her or tasing her and sending electricity though the body of the baby. Sheriff Luna was informed by a County official that he was wrong, that it is not against policy for a deputy to hit a resident, that deputies can strike a suspect to protect and save a life or defend himself.

Unfortunately, after Sheriff Luna was informed that part of his claimed basis for termination of Plaintiff was incorrect, and that Gardner did not violate policy when he struck the suspect to save the baby, Luna and LASD still refused to reverse their improper punishment of Deputy Gardner.

35. On September 29, 2023, Sheriff Luna informed Deputy Gardner that his decision to terminate Gardner was final.

36. In February 2025, Kneer admitted that Deputy Gardner did not engage in criminal conduct, or violate policy. This is a confession that Kneer himself should be investigated for wrongful conduct, as he is the person who initiated the criminal investigation into Deputy Gardner, while knowing that Deputy Gardner did not commit any crimes.

37. In February 2025, Kneer also admitted that Gardner did not violate policies and engaged in no wrongdoing. This is a confession that Kneer himself should be investigated for wrongful conduct, as he is the person who initiated the IAB investigation and the termination of Deputy Gardner, while knowing that Deputy Gardner did not engage in any wrongdoing and violated no policies.

38. Kneer acknowledged the following: 1) Graham v Connor established the use of force standard, which includes an objective analysis of reasonableness, with considerations of a similar officer in same or similar circumstances, allowing for the fact that officers must make split second decisions in rapidly evolving situations, and that the Graham calculus is incorporated in Dept. policies; 2) officers have a right and duty to use force to protect themselves and others; 3) it was reasonable for Gardner to believe that the baby's safety was at risk; 4) all other deputies at the scene viewed the baby's safety as being at risk, and all found Gardner's actions reasonable, necessary, effective and appropriate, and the mother's actions as reckless, irrational and injurious; the deputies' opinions were supported by the reviews of acting Lieutenant Terrence Roberts and Captain Ronald Shaeffer, both of whom indicated discipline of Deputy Gardner would be improper.

39.    One of LASD's top experts on the use of force reviewed this matter. The expert detailed how all LASD's charges against the Plaintiff were bogus and why Deputy Gardner did nothing wrong and should have been commended and not fired.

40.    Still, Deputy Gardner remains terminated. Deputy Gardner was terminated for doing no wrong. As a result of the termination, he has lost 30 years of future income as a peace officer, costing him millions of dollars in salary and retirement.

41.    In addition to financial losses, Plaintiff has suffered severe distress, insomnia, depression, anxiety, and loss of identity. The stress caused by the Defendant has also taken a devastating toll on Plaintiff's family. Deputy Gardner's identity was wrapped around his dream job of being a cop. The Defendant took his career and identity from Deputy Garner, humiliating him and depriving him of, among many other meaningful things, the ability to fully participate in celebrations to honor a fallen partner.

42.    Plaintiff exhausted his administrative remedies under FEHA by applying for a right-to-sue letter under FEHA, attached as Exhibit 3.

43.    In addition to emotional damages, Deputy Gardner demands immediate reinstatement of his career at LASD and resumption of his outstanding career as a deputy with integrity and a passion for protecting the community.

## JURISDICTION AND VENUE

44.    This Court has jurisdiction over all state causes of action. Venue is proper because Defendants are located in the County of Los Angeles, and all the events, actions, or omissions giving rise to these claims occurred in the County of Los Angeles.

## PARTIES

45.    Plaintiff Deputy Timothy Gardner is former deputy for LASD.

46.    Defendant Los Angeles County is a municipal entity that operates and operated LASD, which is an agency of the County. The County is liable for the misconduct of all its

PLAINTIFF TIMOTHY GARDNER FIRST AMENDED COMPLAINT                    10

employees, including Chief Dennis Kneer and Sheriff Robert Luna and all other LASD executives involved in the framing and wrongful termination of the Plaintiff.

### FIRST CAUSE OF ACTION FOR
### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (AGAINST DEFENDANT COUNTY OF LOS ANGELES)

47.    Plaintiff re-alleges and incorporates by reference the allegations in all the preceding 46 paragraphs.

48.    The Defendants terminated Plaintiff because he is Caucasian. This is a violation of the United States Constitution under the 14th Amendment, Equal Protection clause.

49.    The Defendant County terminated Plaintiff even though LASD's leadership knew he did nothing wrong and later admitted it. Deputy Gardner violated no policies and no laws. Deputy Gardner acted quickly to save a baby when the suspect was squeezing and holding the baby precariously and threatening to break its legs. Nonetheless, LASD leadership feared a media storm and public relations nightmare for the department if video of the incident involving a "white cop" using force on an African American woman were released. LASD leadership used the termination of the innocent Plaintiff to depict itself in a positive light, presenting an image of a sheriff department that does not tolerate unconstitutional and racist policing by its deputies. However, ironically, by framing and terminating Plaintiff, the department engaged in blatant racism, as it violated the constitutional rights of Plaintiff.

50.    Under §1983, the County and LASD and its executives are liable for subjecting Plaintiff to conduct under color of state law depriving him of rights, privileges, or immunities guaranteed under the Fourteenth Amendments of the Constitution of the United States of America.

51.    LASD has a long history of the practice and custom of falsely charging employees with wrongdoing to justify discipline and even termination, which continues today. This practice and custom dates back decades, to Sheriff Lee Baca and Undersheriff Paul Tanaka, infamous for

"blackballing" employees, denying their earned promotions or making unwarranted demotions, and rigging false investigations against them.

a. Plaintiff has a constitutional right of due process under the Fourteenth Amendment. He is entitled to procedural due process by the LASD in areas of promotion, investigation and disposition. Plaintiff is also entitled to substantive due process in receiving fair treatment from the LASD leadership, whose policy enactments should not exceed the limits of the inherent authorities. By framing and terminating Plaintiff for being Caucasian even though it knew he did no wrong, LASD deprived him of due process under the Fourteenth Amendment. Plaintiff was denied an adequate opportunity to defend himself against the false allegations made in the fraudulent IAB and ICIB investigations. *See, e.g., Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (holding that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government").

52. LASD also violated Plaintiff's substantive due process rights when its leadership failed to provide fair treatment and subjected him to policy enactments that exceeded the limits of their inherent authority. "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). By terminating Plaintiff when it knew he engaged in no wrongdoing (and saved the life of a baby), LASD infringed on his substantive due process rights. The County destroyed the Plaintiff's career not just at LASD but in all of law enforcement. The Plaintiff has on his record the false charge of termination for use of excessive force on an African American resident. He is thus unemployable in law enforcement.

53.    A local governing body is liable under §1983 only when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. Of City of N.Y., 436 U.S. 658,659 (1978)*. Municipalities can be held liable only for their own illegal acts; they are not liable on a *respondeat superior* basis. *Id.* As a result, "[r]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bryan Cnty. V. Brown,* 520 U.S. 397, 405 (1997). Instead, to establish liability, plaintiffs must plead the existence of both "tortious conduct . . . pursuant to a municipality's 'official policy,'" *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986), and a causal link between that practice or custom and the constitutional violation at issue, *Hunter v. Cnty. of Sacramento,* 652 F.3d 1225, 1233 (9th Cir. 2011). "The Supreme Court has made clear that policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional violations that are so inconsistent with constitutional right that even such a single instance indicates at least deliberate indifference of the municipality." *Benavidez v. Cnty. of San Diego,* 993 F.3d 1134, 1153 (9th Cir. 2021) (citations omitted).

54.    LASD is a branch of the County, and the County is directly liable for wrongdoing by LASD. The County has long ceded policy making authority to LASD, with LASD assuming the role of policymakers, as the County allows LASD to operate on an "island," without transparency, setting policies and disciplining employees who did no wrong with impunity, as if it is not accountable to the County. The County provides no oversight over LASD, allowing and supporting its unconstitutional policing practices.

55.    Plaintiff may "establish the liability of municipal defendants . . . by showing that the decision-making official was, as a matter of state law, a final policymaking authority 'whose edicts or acts may fairly be said to represent official policy' in the area of decision." *Ulrich v. City & Cnty. of San Francisco,* 308 F.3d 968, 985 (9th Cir. 2002) (quoting *Monell,* 436 U.S. at 694). In other words, where a Plaintiff seeks to impose § 1983 liability for an official's exercise of

discretion, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur, 475 U.S. at 481.* District courts identify policymakers by reference to all "relevant legal materials, including state and local positive law, as well as 'custom or usage' having the force of law." *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989) (internal quotation marks and citation omitted).

56.    LASD and Sheriff Luna had final policymaking authority regarding law enforcement pursuant to the longstanding County custom. Although there was no written delegation of such authority to LASD and Luna, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr, 652 F.3d at 1216.* The plaintiff here alleges a plausible theory of liability for an unlawful custom or usage by pleading a series of similar acts framing other employees and alleging that he was subjected to them.

57.    The Defendant County ratified all wrongful conduct, including the framing of Plaintiff. Kneer and others were not held accountable for their misconduct towards the Plaintiff. There has been no investigation into the wrongful conduct of Kneer and others involved in framing Gardner for racist purposes. Even after the County and Kneer admitted that Plaintiff was innocent and violated no laws or policies, the County did nothing to intervene and remedy the situation. Plaintiff may establish municipal liability under § 1983 "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich,* 308 F.3d at 985. The determination of whether a defendant "had been delegated final policymaking authority over the decisions at issue or whether those decisions were ratified by officials with final policymaking authority . . . may turn on questions of fact." *Id.* Additionally, "[a]n official may be found to have been delegated final policymaking authority where the official's discretionary decision is not constrained by policies not of that official's making and not subject to review by the municipality's authorized policymakers." *Id. at 986.*

58.     It is indisputable that the County ratified the conduct of the LASD executives in the framing and wrongful termination of Deputy Gardner. Even after admitting Gardner did no wrong, and was framed and railroaded by Kneer and LASD, the County still did not investigate Kneer and its other executives involved the wrongdoing. The County did not even bother reversing the termination of an innocent employee, who by all accounts was a good, honest cop.

59.     By alleging correctly that "the County allows LASD to operate on an 'island'" without independent oversight, Plaintiff has adequately pleaded a theory of delegation of authority as an alternative to the theory of a custom or practice of final policymaking authority discussed above. There is also no question that LASD and the County have maintained this custom for decades.

60.     Moreover, the alleged actions by the LASD leadership cannot be considered objectively reasonable. In *Ballou v. McElvain*, No. 20-35416 (9th Cir. 2022), the Ninth Circuit held that discriminatory investigation and stalling/denial of promotion are unconstitutional, citing two analogous cases, *Lindsey v. Shalmy*, 29 F.3d 1382, 1385-86 (9th Cir. 1994), and *Bator v. State of Hawai'i*, 39 F.3d 1021, 1028 (9th Cir. 1994) ("any reasonable officer would recognize that discriminatorily conducting an investigation to stall a promotion as unconstitutional under the two cases, read in combination"). Here, LASD's framing of an innocent deputy for public relations purposes cannot be considered objectively reasonable.

61.     Recently, Chief Kneer, through his admissions, demonstrated that he knew that the Plaintiff did not commit criminal conduct, did not violate policy, and did not engage in any wrongdoing. The County confessed in filings in court that Deputy Gardner did not violate policy in any manner. The Plaintiff was punished merely based on race, an illegal and unfair targeting based on a protected characteristic.

62.     As a direct, foreseeable, and proximate cause of Defendant's deprivation of Plaintiff's civil rights, Plaintiff suffered extreme mental anguish, anxiety, severe distress, physical pain, and humiliation. Plaintiff was required to and did employ and will in the future employ

physicians and health care providers to examine, treat, and care for him, and did, and will in the future, incur medical and incidental expenses. The exact amount of full expenses is unknown to Plaintiff at this time.

63.     Plaintiff has also suffered substantial loss of earnings, several million dollars, due to the termination.

64.     Plaintiff timely exhausted his remedies.

\

## SECOND CAUSE OF ACTION FOR
## RACE DISCRIMINATION IN VIOLATION OF FEHA
## (AGAINST DEFENDANT COUNTY OF LOS ANGELES)

65.     Plaintiff re-alleges and incorporates herein by reference all the preceding 64 paragraphs as if fully set forth herein.

66.     Under Government Code section 12940(a) it is unlawful for an employer to discriminate against an employee in the terms and conditions of his employment because of his race or ethnicity.

67.     Kneer and LASD terminated the Plaintiff because he's Caucasian. Kneer and the County admitted that Gardner did not do anything wrong.

68.     Deputy Gardner saved a baby when the suspect was threatening to break the baby's legs. Chief Dennis Kneer framed Plaintiff and convinced Sheriff Luna to terminate the Plaintiff because it "looked bad," by which the LASD executives meant it was "bad optics" for a white cop to hit a black woman to take her baby. If Deputy Gardner were not white, he would not have been terminated. Kneer and other LASD executives openly talked about how it looked bad, it was "bad optics" for a white cop to use such force on an African American resident, that the media would get ahold of the video showing a white deputy hitting a black lady and that this would bring bad publicity for LASD.

69.     Race should not have been a factor in LASD's treatment of Plaintiff. If not for racism, Plaintiff Gardner would not have been disciplined and terminated.

70.     While blatant racism was behind the County's actions towards the Plaintiff, race had nothing to do with Deputy Gardner's actions. Deputy Gardner saved a baby from grave harm and violated no policies in the process. Deputy Gardner did exactly what he should have done to handle the call. The County itself admitted in court papers that Deputy Gardner did no wrong.

71.     Chief Kneer targeted Deputy Gardner because Gardner happened to be Caucasian and the suspect happened to be an African American resident. Plaintiff, at all times mentioned herein, is a member of a protected class of persons based on race, and he engaged in protected activities contemplated by Government Code sections 12940, *et. seq.*

72.     The plaintiff is informed and believes and thereon alleges that Defendant County and LASD and its leadership and supervisors treated him adversely based on his race. LASD gave Plaintiff an adverse employment action – termination – because it was "bad optics" for a Caucasian deputy to strike an African American suspect even in order to save the baby from the suspect who was threatening to break the baby's legs and could have killed the baby.

73.     FEHA defines "employer" broadly to encompass "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly." *Gov. Code* § 12926(d). Here, Defendant County was the employer of Plaintiff, LASD, Chief Kneer, and Sheriff Luna, and all other executives involved in railroading Plaintiff were agents of the County. As set forth above, the County discriminated against the Plaintiff because of his race. Defendant engaged in illegal, intentional discrimination, treating Plaintiff differently from deputies of other races and subjecting him to adverse employment actions.

74.     It should be mentioned that the race of the executives involved in the racist targeting of the Plaintiff is irrelevant. What is relevant is why Plaintiff was targeted: he is Caucasian.

75.     At all times herein mentioned, the County had actual and/or constructive knowledge of the discriminatory conduct levied against Plaintiff by Defendant. Moreover, the

discriminatory conduct was also condoned by the County, which did nothing to remedy the wrongful conduct and to hold its employees accountable for this wrongful conduct.

76.    As a direct, foreseeable, and proximate cause of Defendant's discriminatory, retaliatory conduct and failure to act, Plaintiff suffered humiliation, embarrassment, anxiety, mental anguish, and extreme distress. The County caused Plaintiff to lose his career in law enforcement and millions of dollars in lost salary.

77.    As a further legal result of the above-described conduct of Defendants, Plaintiff has and will continue to incur attorneys' fees and in costs in amount according to proof.

78.    Plaintiff timely exhausted administrative remedies.

### THIRD CAUSE OF ACTION FOR
### VIOLATION OF FEHA– FAILURE TO TAKE ALL REASONABLE STEPS TO PREVENT DISCRIMINATION
### (AGAINST DEFENDANT COUNTY OF LOS ANGELES)

79.    Plaintiff re-alleges and incorporates herein by reference all the preceding 78 paragraphs, as if fully set forth herein.

80.    Defendant County failed to take all reasonable steps necessary to prevent the aforementioned discrimination against Plaintiff in violation of Government Code section 12940(k). The County knew that Plaintiff belonged to a protected class and that he was treated differently than other employees and officials because of his race.

81.    The Plaintiff was fired because he's Caucasian. He violated no policies and broke no laws. He did nothing wrong. It is not a secret within LASD why Gardner was fired. It is not speculation why Gardner was fired. Yet, the Defendant did nothing to prevent it and nothing to reverse it, even after the County admitted Deputy Gardner did nothing wrong.

82.    The conduct, statements and acts described herein were an ongoing part of a continuing scheme and course of conduct. Defendant County knowledge of the above-described

PLAINTIFF TIMOTHY GARDNER FIRST AMENDED COMPLAINT          18

facts and circumstances and ratified the wrongs and injuries mentioned herein even though it had the ability to prevent, remedy and/or correct these wrongs. Defendant County ratified and refused to remedy the aforementioned conduct, notwithstanding the fact that its officials, supervisors and/or managing agents knew or reasonably should have known of the conduct and its unlawful motivations.

83.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out of pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of Defendant's conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

84.    The plaintiff was subjected to repeated adverse employment actions, including termination, which have cost him millions of dollars in lost salary.

85.    As a further direct and proximate result of Defendant's conduct, Plaintiff has suffered mental and emotional pain, severe distress and discomfort, and damage to his occupational reputation, all to the detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial. The County allowed and sanctioned and supported discrimination against Plaintiff.

86.    Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to Government Code section 12965(b).

87.    Plaintiff exhausted his administrative remedies.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays to the Court for the following relief:

1.  For special damages, including but not limited to, lost earnings, benefits and/or out-of-pocket expenses in an amount according to proof at the time of trial, all in an amount set forth above and/or according to proof at the time of trial;

2. For further special damages, including but not limited to, lost future earnings, benefits and other prospective damages in an amount set forth above and/or according to proof at the time of trial, at a minimum of $5 million.

3. For general damages, including for pain and suffering, in an amount set forth above and/or according to proof at the time of trial.

4. For interest: Pre-Judgment and Post-Judgment at the maximum legal rate;

5. For costs of suit; and attorney's fees under the whistleblower statutes.

6. For such other and further equitable relief as it may deem just and proper.

Dated: July 11, 2025,                    THE LAW OFFICES OF VINCENT MILLER

_Vincent Miller_

_____

VINCENT MILLER, Attorney for Plaintiff

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

DATED: July 11, 2025

THE LAW OFFICES OF VINCENT MILLER

_Vincent Miller_
_____

By VINCENT MILLER
Attorney for Plaintiff Timothy Gardner

**EXHIBIT 1**

**PARTY ADMISSIONS BY THE COUNTY: ANSWER TO THE
COMPLAINT**

STEVEN J. ROTHANS – State Bar No. 106579
KIMBERLY MOROSI – State Bar No. 345641
CARPENTER, ROTHANS & DUMONT, LLP
500 S. Grand Avenue, 19th Floor
Los Angeles, CA  90071
(213) 228-0400 / (213) 228-0401 [Fax]
srothans@crdlaw.com / kmorosi@crdlaw.com

Attorneys for Defendant County of Los Angeles

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YEAYO RUSSELL, an individual and as Guardian Ad Litem for minor D.F.,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a public entity, and DOES 1-10 inclusive,<br><br>Defendants. | Case No.:  2:23-cv-05979-JWH-SK<br><br>**ANSWER TO COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL** |

COMES NOW Defendant, County of Los Angeles, a public entity, answering Plaintiffs' Complaint for Damages (hereinafter "Complaint") on file herein, admits, denies and alleges as follows:

## ADMISSIONS AND DENIALS

1.     In response to paragraphs 1, 2, 8, 13, 19, 49, 59 (erroneously labeled as 56), and 69 (erroneously labeled as 66) of the Complaint, this answering defendant states that this paragraph contains characterization of the Complaint to which no response is required.  To the extent that a response is required, this

- 1 -

ANSWER TO COMPLAINT FOR DAMAGES;
DEMAND FOR JURY TRIAL

answering defendant denies the allegations of these paragraphs.

2. In response to paragraphs 3, 23, 24, 25, 26, 27, 29, 34, 35, 36, 39, 40, 41, 46, 53, 61 (erroneously labeled as 58), 62 (erroneously labeled as 59), 64 (erroneously labeled as 61), and 65 (erroneously labeled as 62) of the Complaint, this answering defendant denies the allegations set forth therein.

3. In response to paragraphs 4, 14, and 15 of the Complaint, this answering defendant admits that the involved deputies were members of the Los Angeles Sheriff's Department ("LASD") acting in the course and scope of their duties as LASD deputies. Except as expressly admitted, this answering defendant denies the remaining allegations of these paragraphs.

4. In response to paragraphs 5, 6, 7, 16, 17, 18, 28, 31, 33, 37, 38, 42, 43, 44, 45, 47, 48, 51, 52, 54, 55, 56 (erroneously labeled as 53), 57 (erroneously labeled as 54), 58 (erroneously labeled as 55), 63 (erroneously labeled as 60), 66 (erroneously labeled as 63), 67 (erroneously labeled as 64), and 68 (erroneously labeled as 65) of the Complaint, this answering defendant states that these paragraphs contain legal conclusions to which no response is required. To the extent a response is required, this responding defendant denies the allegations of these paragraphs.

5. In response to paragraph 9 of the Complaint, this answering defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in this paragraph, and on that basis, denies those allegations.

6. In response to paragraphs 10, 11, and 12 of the Complaint, this answering defendant admits that the LASD is a department within the County of Los Angeles, which is a duly organized public entity within the State of California. Except as expressly admitted, this answering defendant denies the remaining allegations of this paragraph.

7. In response to paragraphs 20 and 21 of the Complaint, this answering

- 2 -

ANSWER TO COMPLAINT FOR DAMAGES;
DEMAND FOR JURY TRIAL

Case 2:25-cv-07594-SRM-SK    Document 1-2    Filed 08/14/25    Page 26 of 47    Page ID
#:37
Case 2:23-cv-05979-KK-SK    Document 14    Filed 11/03/23    Page 3 of 8    Page ID #:56

defendant states that this paragraph contains characterizations of the Complaint which no response is required. To the extent that a response is required, this answering defendant denies the allegations of these paragraphs, except admits that this Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 1331, 1343, 1983, 1988, and 1367, that based on the allegations contained in the Complaint, venue is proper under 28 U.S.C. § 1391, and that Plaintiffs' asserted claims arise under 42 U.S.C. § 1983. Except as expressly admitted, this answering defendant denies the remaining allegations of these paragraphs.

8. In response to paragraphs 22, 30, 32, 50, and 60 (erroneously labeled as 57) of the Complaint, this answering defendant incorporates its admissions and denials to the paragraphs referenced therein.

## AFFIRMATIVE DEFENSES

1. Plaintiffs have failed to allege facts sufficient to state a claim upon which relief can be granted.

2. The conduct of the involved deputies was objectively reasonable and did not interfere with nor deprive Plaintiffs of their constitutional rights.

3. Any damages which resulted to Plaintiffs were caused by third parties whose acts were superseding and intervening to any cause relating to this answering defendant or the involved deputies.

4. Any recovery on Plaintiffs' Complaint, or any purported claim or cause of action alleged therein, is barred in whole or in part by the comparative fault of Plaintiffs and/or others.

5. This answering defendant is immune from liability herein because, at all times mentioned in the Complaint, the involved deputies conducted themselves reasonably, in good faith, and within all existing constitutional and statutory parameters pertaining to their actions as duly authorized law enforcement officers, and thus are entitled to qualified immunity from suit herein.

6. Plaintiffs failed to exercise ordinary care, caution, and prudence for

- 3 -

Case 2:23-cv-05979-KK-SK Document 14 Filed 11/03/23 Page 4 of 8 Page ID #:57

their own welfare so as to avoid the happening of the alleged injuries and thereby contributing thereto. Plaintiffs' recovery is therefore barred to the degree of such contribution, comparative fault and/or negligence, including Plaintiffs' own criminal conduct.

7. To the extent the Complaint seeks damages for any state tort claims, those claims are barred in that Plaintiffs have failed to properly comply with the provisions of the California Tort Claims Act in the filing of an appropriate claim with a public entity prior to the initiation of the lawsuit, pursuant to the provisions of Government Code sections 900, 901, 910, and 911.2; furthermore, the Tort Claim(s) submitted does not authorize the various state torts set forth in Plaintiffs' Complaint.

8. Plaintiffs assumed the risk of injury for their actions and the results thereof.

9. This answering defendant is immune from liability by the application of one or more of the immunities set forth in the California Government Code, including the immunities set forth in sections 818.6, 820, 820.2, 820.25, 820.4, 820.6, 820.8, 821, 821.6, 821.8, 822.2, 845, and 845.6; Civil Code sections 43.55, 47, and 3333.3; Penal Code sections 243, 834, 835, 835(a), 836, and 836.5.

10. The acts complained of by Plaintiffs were provoked by Plaintiffs themselves in that they failed to comply with the lawful orders of law enforcement.

11. Any recovery on Plaintiffs' Complaint, or any purported claim or cause of action alleged therein, is barred in whole or in part by Plaintiffs' own conduct which violated numerous provisions of the California Penal Code and, as such, was negligent per se.

12. In doing the acts alleged in Plaintiffs' Complaint, the involved deputies were acting in self-defense and defense of others.

13. Plaintiffs' action is barred by the doctrines of res judicata and/or collateral estoppel.

- 4 -

ANSWER TO COMPLAINT FOR DAMAGES;
DEMAND FOR JURY TRIAL

Case 2:25-cv-07594-SRM-SK    Document 1-2    Filed 08/14/25    Page 28 of 47    Page ID
Case 2:23-cv-05979-KK-SK    Document 14    Filed 11/03/23    Page 5 of 8    Page ID #:58
#:39

14. Plaintiffs consented to the acts and conduct of the involved deputies involved in the subject incident.

15. Plaintiffs' claims are barred by superseding or intervening causes.

16. Any recovery on Plaintiffs' Complaint, or any purported claim or cause of action alleged therein, is barred in whole or in part by Plaintiffs' failure to mitigate their damages.

17. Plaintiffs' action is barred by the applicable statute of limitations.

18. The conduct of the involved deputies at the time of the incidents and events referred to in the Complaint was privileged under California law.

19. Plaintiffs' action is barred by the doctrines of waiver, laches, estoppel and unclean hands.

20. The acts complained of by the plaintiffs were provoked by their own unlawful and wrongful conduct in that they willfully, maliciously, unlawfully, and wrongfully interfered with the lawful orders of a police officer, and purposefully resisted the detention, arrest and/or investigatory orders, despite requests that they desist, and continued to do so.

21. At the time of the incident that gives rise to this lawsuit, the plaintiffs were on parole and/or probation and, thus, subject to search and seizure without probable cause or reasonable suspicion.

22. At all times mentioned in the Complaint, Plaintiffs knowingly, willingly and voluntarily assumed the risks involved in their conduct and appreciated the foreseeability of being injured, when they continued their conduct and actions of refusing to obey the lawful orders of peace officers, resisting the detention and/or arrest and/or attempting to escape and/or flee a lawful arrest and/or detention. Despite said knowledge and appreciation of the risk of injuries, Plaintiffs voluntarily chose to continue their actions and conduct, which resulted in their alleged injuries and damages.

23. All times mentioned in the Complaint, and prior to the time when the

- 5 -

ANSWER TO COMPLAINT FOR DAMAGES;
DEMAND FOR JURY TRIAL

Case 2:25-cv-07594-SRM-SK    Document 1-2    Filed 08/14/25    Page 29 of 47    Page ID
Case 2:23-cv-05979-KK-SK    Document 14    Filed 11/03/23    Page 6 of 8    Page ID #:59
#:40

involved deputies are alleged to have committed the acts complained of, the plaintiffs willfully, wrongfully and unlawfully refused to follow the reasonable instructions and directions and commands of said peace officers, and attempted to assault, batter and use deadly force on the peace officers, as well as presented a threat to others in the vicinity, so as to cause the involved deputies to take reasonable action to restrain the plaintiffs, and overcome resistance. For this reason, the conduct of the involved deputies was in the interests of officer safety, self-defense, defense of others, and in defense of property.

24. Probable cause and/or a good faith belief of probable cause existed for the plaintiffs' arrest, detention, search and/or investigation of the incidents and events referred to in the Complaint.

25. Reasonable suspicion existed for the plaintiffs' arrest, detention, search and/or investigation of the incidents and events referred to in the Complaint.

26. Any search of the plaintiffs' person was lawful under numerous exceptions to the warrant requirement, including but not limited to search incident to lawful arrest, exigent circumstances, emergency aid and consent.

27. This answering defendant reserves the right to amend this Answer to include additional affirmative defenses that may become known.

Wherefore, this answering defendant prays for relief as follows:

1. That Plaintiff take nothing by his Complaint herein;

2. That this answering defendant recover the costs of suit incurred herein.

3. That this answering defendant recover his reasonable attorney's fees incurred herein.

4. That the Court award such other and further relief as it deems just and proper.

///

- 6 -

ANSWER TO COMPLAINT FOR DAMAGES;
DEMAND FOR JURY TRIAL

Case 2:25-cv-07594-SRM-SK   Document 1-2   Filed 08/14/25   Page 30 of 47   Page ID
Case 2:23-cv-05979-KK-SK   Document 14   Filed 11/03/23   Page 7 of 8   Page ID #:60
#:41

DATED: November 3, 2023    CARPENTER, ROTHANS & DUMONT LLP

                                            /s/ Kimberly Morosi
                            By: _____
                                STEVEN J. ROTHANS
                                KIMBERLY MOROSI
                                Attorneys for Defendant,
                                County of Los Angeles

- 7 -

ANSWER TO COMPLAINT FOR DAMAGES;
DEMAND FOR JURY TRIAL

Case 2:25-cv-07594-SRM-SK    Document 1-2    Filed 08/14/25    Page 31 of 47    Page ID
Case 2:23-cv-05979-KK-SK    Document 14    Filed 11/03/23    Page 8 of 8    Page ID #:61
#:42

## DEMAND FOR JURY TRIAL

Pursuant to Local Rule 38-1, Defendant hereby demands a jury trial as provided in Rule 38(b) of the Federal Rules of Civil Procedure.

DATED: November 3, 2023    CARPENTER, ROTHANS & DUMONT LLP

/s/ Kimberly Morosi

By: _____

STEVEN J. ROTHANS
KIMBERLY MOROSI
Attorneys for Defendant,
County of Los Angeles

- 8 -

ANSWER TO COMPLAINT FOR DAMAGES;
DEMAND FOR JURY TRIAL

EXHIBIT 2


PARTY ADMISSIONS BY THE COUNTY: JOINT REPORT

STEVEN J. ROTHANS – State Bar No. 106579
KIMBERLY MOROSI – State Bar No. 345641
CARPENTER, ROTHANS & DUMONT, LLP
500 S. Grand Avenue, 19th Floor
Los Angeles, CA 90071
(213) 228-0400 / (213) 228-0401 [Fax]
srothans@crdlaw.com / kmorosi@crdlaw.com

Attorneys for Defendant County of Los Angeles

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

YEAYO RUSSELL, an individual and as Guardian Ad Litem for minor D.F.,

  Plaintiffs,

vs.

COUNTY OF LOS ANGELES, a public entity, and DOES 1-10 inclusive,

  Defendants.

Case No.: 2:23-cv-05979-FMO-SK

**JOINT REPORT RE: EARLY MEETING OF COUNSEL**

COME NOW Plaintiffs Yeayo Russell and D.F., and Defendant County of Los Angeles, a public entity, pursuant to the Court's order setting scheduling conference (Dkt. 16), hereby submit the following joint report regarding their early meeting of counsel, which was held on November 14, 2023.

**A.     STATEMENT OF THE CASE**

This civil action arises out of a traffic stop and subsequent use of force incident that occurred between Plaintiffs and deputies with the Los Angeles Sheriff's Department ("LASD") on July 14, 2022. Plaintiffs, Yeayo Russell and

- 1 -

her minor son D.F., filed this civil lawsuit against the County of Los Angeles, asserting claims under 42 U.S.C. § 1983 for excessive force and municipal liability.

Defendant denies Plaintiffs' allegations and asserts that the deputies' conduct was reasonable, and thus, did not amount to excessive force. Defendant further denies that the deputies violated any of Plaintiffs' constitutional rights and assert that the involved deputies are entitled to qualified immunity.

**B.    SUBJECT MATTER JURISDICTION**

Jurisdiction is proper in this court, given the plaintiffs' claims against the defendant are brought under 42 U.S.C. § 1983.

**C.    LEGAL ISSUES**

**Plaintiffs:**

**Defendant:**

At this time, Defendant believes the following are the key legal issues to be decided:

1. Whether the deputies used force against Plaintiff D.F.;

2. Whether the use of force against Plaintiff Yeayo Russell was reasonable;

3. Whether the County of Los Angeles has a custom, practice, and/or policy that led to a violation of Plaintiffs' civil rights;

4. Whether the County of Los Angeles had deficient training policies that led to a violation of Plaintiffs' civil rights;

5. Whether the involved deputies are entitled to qualified immunity.

**D.    PARTIES, EVIDENCE, ETC.**

Plaintiffs are Yeayo Russell and her minor son D.F.

Defendant is the County of Los Angeles.

Percipient witnesses in the case will be the other law enforcement personnel and Plaintiffs' friends/acquaintances who were present at the scene of the subject

- 2 -

JOINT REPORT RE: EARLY MEETING OF COUNSEL

traffic stop and use of force incident.

Relevant evidence will include investigative materials regarding the incident, and the plaintiffs' medical records and other records relevant to damages.

**E.     INSURANCE**

The County of Los Angeles is permissibly self-insured pursuant to Government Code section 990.

**F.     MAGISTRATE JUDGE**

At this time, the parties do not agree to try the case before a magistrate judge.

**G.     DISCOVERY**

DISCOVERY CUT–OFF

The parties jointly propose a discovery cut-off date of **September 24, 2024**

EXPERT DISCOVERY

The parties propose that expert disclosures be governed by the timetable outlined in Federal Rule of Civil Procedure 26(a)(2)(D).  Based on the proposed December 10, 2024 trial date, the proposed disclosure dates are:

Initial disclosures: **October 29, 2024**

Rebuttal disclosures:  **November 19, 2024**

With these disclosure dates, the parties propose an expert discovery cut-off date of **December 17, 2024.**

**H.     MOTIONS**

At this time, Defendant does not anticipate filing any motions to add parties or claims, file amended pleadings or transfer venue.  Defendant requests that the deadline to amend the pleadings or add parties be set at February 13, 2024.

**I.     CLASS CERTIFICATION**

Not applicable.

**J.     DISPOSITIVE MOTIONS**

Defendant anticipates that they will file a Motion for Summary Judgment on

- 3 -

the grounds that the evidence does not support any of the plaintiffs' claims and that the involved deputies are entitled to qualified immunity. The parties propose that the cut-off date for dispositive motions be **October 22, 2024.** Plaintiffs request two weeks to file their opposition to any dispositive motion, and do not oppose if Defendant requests two weeks to reply. The defendant is agreeable to stipulating to a briefing schedule for dispositive motions.

The parties expect that Motions in Limine will be filed prior to trial, but at this time it is premature to identify what evidentiary issues will be raised on those motions.

**K.** **SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION (ADR)**

The parties have not yet engaged in any dialogue concerning settlement possibilities and no demands or offers have been made. The parties choose to participate in ADR Procedure 2, that is, to participate in a mediation with Rick Copeland from the Court's panel of pro bono mediators.

**L.** **PRETRIAL CONFERENCE AND TRIAL**

The parties propose **January 7, 2025** for the pretrial conference and **January 28, 2025** for trial.

**M.** **TRIAL ESTIMATE**

The parties are requesting a jury trial. The estimated length of trial is 5-7 days. At this time, Defendant anticipates calling approximately 8 witnesses.

**N.** **TRIAL COUNSEL**

Defendant – Steven J. Rothans and Kimberly Morosi of Carpenter, Rothans & Dumont LLP

Plaintiffs – Jamon Hicks

**O.** **INDEPENDENT EXPERT OR MASTER**

The parties do not believe that an independent expert or master is necessary in this case.

- 4 -

JOINT REPORT RE: EARLY MEETING OF COUNSEL

**P.**   **OTHER ISSUES**

At this time, the parties do not anticipate there being other significant issues affecting the case.  The parties are not requesting a telephonic scheduling conference.

DATED:  November 15, 2023          DOUGLAS HICKS LAW, APC


By:   ___/s/ Jamon Hicks_____
JAMON R. HICKS
RACHEL P. JACOBS
BRENNAN L.G. HUGHES
Attorneys for Plaintiffs


DATED:  November 22, 2023   CARPENTER, ROTHANS & DUMONT LLP


/s/ Kimberly Morosi
By:   _____
STEVEN J. ROTHANS
KIMBERLY MOROSI
Attorneys for Defendant,
County of Los Angeles

JOINT REPORT RE: EARLY MEETING OF COUNSEL

EXHIBIT 3

RIGHT TO SUE LETTER

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**

KEVIN KISH, DIRECTOR

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 9, 2025

Timothy Gardner
16255 Ventura Blvd, Encino, CA 91436 Suite 625
Encino,  91436

RE:    **Notice of Case Closure and Right to Sue**
       CRD Matter Number: 202503-28434310
       Right to Sue: Gardner / County of Los Angeles

Dear Timothy Gardner:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective March 9, 2025 because an immediate
Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

After receiving a Right-to-Sue notice from CRD, you may have the right to file
your complaint with a local government agency that enforces employment anti-
discrimination laws if one exists in your area that is authorized to accept your
complaint. If you decide to file with a local agency, you must file before the
deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your
complaint with a local agency does not prevent you from also filing a lawsuit in
court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal
Employment Opportunity Commission (EEOC) to file a complaint within 30 days
of receipt of this CRD Notice of Case Closure or within 300 days of the alleged
discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
## Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**
Timothy Gardner

CRD No. 202503-28434310

Complainant,

vs.

County of Los Angeles
,

Respondents

_____

1. Respondent **County of Los Angeles** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Timothy Gardner**, resides in the City of **Encino**, State of .

3. Complainant alleges that on or about **March 9, 2025**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's color, race (includes hairstyle and hair texture) and as a result of the discrimination was terminated.

**Additional Complaint Details:**

-1-
*Complaint – CRD No. 202503-28434310*

Date Filed: March 9, 2025

CRD-ENF 80 RS (Revised 2025/02)

VERIFICATION

I, **Vincent Miller**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The matters alleged are based on information and belief, which I believe to be true.

On March 9, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Encino, California**

-2-
*Complaint – CRD No. 202503-28434310*

Date Filed: March 9, 2025

CRD-ENF 80 RS (Revised 2025/02)

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Vincent Miller (SBN 291973), Nick Sage (SBN 298972)<br>The Law Offices of Vincent Miller<br>16255 Ventura Boulevard, Suite 625<br>Encino, CA 91436<br>TELEPHONE NO.: 213-948-5702    FAX NO.: 818-450-0698<br>ATTORNEY FOR (Name): Plaintiff Timothy Gardner | Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>3/11/2025 11:42 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By C. Cervantes, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Timothy Gardner v. County of Los Angeles

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 25STCV06878 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): 3
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 10, 2025
Vincent Miller
_____
(TYPE OR PRINT NAME)

▶ *Vincent Miller*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**   CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE: Timothy Gardner v. County of Los Angeles | CASE NUMBER 25STCV06878 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|
| **Auto Tort** — Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** — Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
|  | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
|  | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
|  | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
|  | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
|  | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

| SHORT TITLE: Timothy Gardner v. County of Los Angeles | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☑ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: Timothy Gardner v. County of Los Angeles | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment With Damages<br>☐ A6123  Workplace Harassment With Damages<br>☐ A6124  Elder/Dependent Adult Abuse Case With Damages<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name/Change of Gender<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Timothy Gardner v. County of Los Angeles | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>□ 1. ☑ 2. ☑ 3. □ 4. □ 5. □ 6. □ 7. □ 8. □ 9. □ 10. □ 11. | ADDRESS:<br>500 W. Temple St., Los Angeles, CA, 90012 |
|---|---|

| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90012 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Stanley Mosk Courthouse_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: March 10, 2025

_Vincent Miller_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4